

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00375-CR

Alan Ray **NICHOL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 15, Bexar County, Texas
Trial Court No. 695248
Honorable Melissa Vara, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Irene Rios, Justice
Lori M. Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: July 31, 2026

AFFIRMED

In two issues, appellant Alan Ray Nichol appeals his indecent assault and indecent exposure convictions. Specifically, Nichol contends (1) the trial court erred by admitting into evidence recorded jail calls between Nichol and other parties and (2) the State made an impermissible closing argument during the punishment phase of trial by implying the community expected the jury to recommend jail time. We affirm.

**BACKGROUND**

One night while working as security officers for a private company, Debbie[1] did a training ride-along with Nichol, who only had the job as a favor to Nichol's brother-in-law (later referred to as "E.G." during the recorded jail calls). Prior to the ride-along, Debbie had been introduced to Nichol, but she did not know him. Because she was still training, Debbie did not carry any equipment that night: she only wore her uniform.

Debbie explained that as the shift progressed, Nichol began asking her "uncomfortable" personal questions such as whether she had a boyfriend and other sexually related questions. According to Debbie, Nichol told her not to be embarrassed to answer the questions because all recording devices were off. Later, Nichol stopped the car. When Debbie asked why they were stopped, Debbie noticed Nichol had lowered his pants and suggested that he and her do something together. Debbie declined and told Nichol she only wanted to learn her job.

Thereafter, Nichol exposed his penis to Debbie, to which she asked him to stop and explained to him she felt uncomfortable. Despite her pleas to stop, Nichol continued exposing his erect penis, even masturbating, telling Debbie she had nothing to worry about. Continuing to claim everything was okay, Nichol began rubbing Debbie's leg eventually grabbing her crotch area over her clothes. Even after Debbie refused his gestures and asked him to stop, Nichol grabbed Debbie's hand and forced her to touch his penis. Nichol forced Debbie to touch his penis twice, eventually stopping everything after recognizing Debbie's refusal to engage with him.

At the end of the shift and before Debbie went home, Nichol told her not to tell anyone about what happened between them. Nevertheless, Debbie told her ex-boyfriend what happened,

---

[1] To protect the identity and privacy of the victim and others, we use pseudonyms for their names. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

and after taking a nap following her night shift, she called the police and reported the incident with Nichol. Later that same day, Debbie also reported the incident to her employer.

The San Antonio Police Department detective investigating the incident contacted the security company, and the security company confirmed Debbie reported the incident and informed law enforcement that Nichol had been fired.

Following the investigation of the October 2020 incident, Nichol was charged in October 2022 with two offenses: indecent assault and indecent exposure. Although the original capias for Nichol's arrest was issued in October 2022, Nichol absconded and was not arrested until January 2024 to finally stand trial in April 2024.

Debbie, law enforcement officers, and one of the owners of the security company, S.M., testified at trial. S.M. testified that E.G., Nichol's brother-in-law, was the majority owner of the security company and oversaw the night operations of the company while S.M. focused more on marketing to obtain new customers. In addition to Debbie's complaint about Nichol, S.M. stated that the company received two to three calls from customers complaining that Nichol was aggressive with females. Because E.G. was related to Nichol, E.G. directed S.M. to address Debbie and law enforcement regarding Debbie's complaint. According to S.M., E.G. said he would address Nichol directly about the incident. S.M. acknowledged that the company's patrol cars were equipped with dashcams and that the officers usually had body-cameras for patrol. However, S.M. had no knowledge of whether any recordings were made the night of the incident as it was his understanding that E.G. would handle any recordings.

The jury found Nichol guilty of both indecent assault and indecent exposure. Accepting the jury's recommendation, the trial court sentenced Nichol to serve 365 days for committing indecent assault and 180 days for committing indecent exposure, to run concurrently and be served

in the Bexar County Jail. Nichol filed a motion for new trial and arrest of judgment that was denied by the trial court. Nichol appeals his final judgment of convictions.

**ADMISSION OF EVIDENCE: RECORDED JAIL CALLS**

In his first issue, Nichol contends the trial court erred by admitting into evidence recorded jail calls between him and others. Specifically, Nichol asserts the calls are not relevant; and, even if relevant, their probative value is outweighed by substantial prejudice.

*A. Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Under this standard, we will uphold the trial court's decision to admit or exclude evidence as long as it is within the zone of reasonable disagreement and the trial court's decision is correct under any applicable theory of law. *Id*.; *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). The erroneous admission of evidence qualifies as non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

*B. Objections to the Admission of the Evidence and the Challenged Evidence*

Nichol complains about the trial court's admission of four recorded jail calls: three five-minute calls and one fifteen-minute call. Prior to their admission, Nichol objected to their relevancy claiming the calls' content did not "speak to any of the elements of the case." The State responded claiming the calls were relevant as they "show[] indications of guilt and knowledge" on Nichol's part. The trial court inquired as to whether Nichol referenced the present case during the calls. After both parties acknowledged that Nichol did reference the case during the calls, the trial court overruled Nichol's relevancy objection.

Nichol then contended that the prejudice of the calls' content outweighs their probative value. After assuring that the calls contained Nichol's "own words" and he was admonished about the calls being recorded, the trial court overruled Nichol's Rule 403 objection without further comment on the record. *See* TEX. R. EVID. 403. Subsequently, the trial court admitted the recorded jail calls into evidence, and they were played for the jury.

Summaries of the four calls are as follows:

*1. Call One*

- Nichol asks the other person on the line whether he remembers the "sh--" the person told Nichol about before, explaining that he was arrested on a warrant based on the "indecent exposure" from two years ago.

- Nichol and the other person talk about getting Nichol bonded out of jail. Additionally, Nichol mentions that one of his brothers (referred to as "J.B.") has his car. The person expresses concern that J.B. may have alerted the police to Nichol's location, leading to his arrest.

- The person on the line adds that this is what he "worried" about without specifying what he meant. However, Nichol responds by claiming things would have been fine, but "they wanted to go somewhere," referring to the people Nichol was with who did not want to stay at the house where they were just prior to Nichol's arrest.

*2. Call Two*

- Nichol's mom (referred to as "Mom") begins her conversation with Nichol telling him that he "f---- up" by getting picked up for "indecent exposure." When Nichol attempts to explain that he was only arrested on a warrant issued two years ago, Mom replies that she heard differently from people that allegedly called her from the courthouse.

- Nichol tells Mom about his desire to bond out of jail. His mother replies that he does not need to get out and deserves to be in jail. Mom explains why, telling Nichol that he "went down there," got "f------ high," "quit [his] job," and now is going to lose his car because he has been "down there" without a job for a month, and now cannot pay the car loan. Mom adds that he has been "f------ doing drugs" and has not "learned anything." Nichol discounts what his mother says and asks her if she will get him out of jail so that he can go to Dallas, to which Mom asks, "Why, so you can live out of your car on the streets in Dallas?" When Nichol asks Mom again if she can bail him out of jail, Mom says she does not have any money.

*3. Call Three*

- Most of this phone call concerns bailing Nichol out of jail. Impatiently, Nichol asks Mom why it is taking so long. Mom tells Nichol he needs to relax and that it takes a long time when people do not have money but must raise it. Mom adds that the family is trying to locate his car so they can sell things to raise the bail money. Nichol then tells Mom he hopes they are not selling a lot of things out of his car without his permission.

- Mom also tells Nichol that bailing him out of jail is not everyone else's problem and that it is Nichol's fault he is stuck in jail. Nichol argues that he would not be in jail if the San Antonio Police Department would not have "pull[ed] the sh--" they allegedly did and arrested him. In response, Mom corrects Nichol stating he would not be in his position if he had taken care of this problem two years ago. Nichol claims he took care of it two years ago when he was told "nothing was going on." Mom responds that he did not take care of it or listen to her but instead went "down there" after quitting his job, stayed too long, and "got busted."

*4. Call Four*

- Nichol asks his brother-in-law, E.G., to get him out of jail, adding that his mother blocked the jail's phone number so he cannot contact her. E.G. tells Nichol he has started the bond paperwork. For several minutes, they discuss Nichol's car and J.B.'s refusal to allow E.G. to take it. E.G. records a portion of their conversation wherein Nichol authorizes E.G. to take possession of Nichol's car and take it to a designated location.

- E.G. reminds Nichol that he would not be in jail had he "handle[d] this a long time ago." E.G. also tells Nichol he needs good counsel to handle the case. While Nichol did not specifically disagree with E.G., he claims that when the case goes to court, "this sh--" will "get dropped and dismissed anyhow."

- When talking about getting Nichol bonded out, E.G. explains someone must sign the bond and because E.G. works for the bond company he cannot sign it. Nichol asks if his sister can sign, to which E.G. states she probably can, but that if she signs, Nichol better not "mess up" because his sister will be liable, and the bondsman will have to be paid the full amount.

- E.G. explains that after this is taken care of, Nichol needs to get away from San Antonio and everything around here, including his family and drugs. E.G. mentions helping Nichol find a "shelter."

*C. Relevance under Rule 401*

   *1. Applicable Law*

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. "Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (citations omitted). "A 'fact of consequence' includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred." *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016).

   *2. Analysis*

Nichol argues the calls' content was not relevant to his trial. However, we first note that during each of the four calls, Nichol discusses this case, his arrest, and bonding out of jail. Additionally, the content of the calls alerted the jury that Debbie made the allegations several years prior. Despite both E.G. and Mom instructing Nichol to address the allegations at that time, Nichol took actions, including absconding, to avoid any responsibility. Moreover, Nichol's reference to Debbie's claims as "sh--" regarding exposing his penis to her and forcing her to touch it, reveals Nichol's lack of concern for the seriousness of the allegations or Nichol's belief that "when this case goes to court," it will "get dropped and dismissed" because the allegations lack credibility.

There was no physical evidence in this case; rather, the case involved testimonial evidence, specifically Debbie's testimony. During all the calls, Nichol discussed aspects of his case. Evidence regarding Nichol's deliberate avoidance of taking responsibility to address the allegations, his dismissive attitude regarding the allegations, absconding for two years, and his

sole focus of being bonded out of jail could have aided the jury when determining a fact of consequence, such as assessing Nichols's culpability to commit the crimes and his overall demeanor towards the criminal activity. *See Gonzalez*, 544 S.W.3d at 370; *Henley*, 493 S.W.3d at 84.

Based on our review, we cannot conclude the trial court abused its discretion when it overruled Nichol's relevance objection to the recorded jail calls.

### D.  Rule 403 Balancing Test

#### 1.  Applicable Law

Nevertheless, even if the evidence is relevant under Rule 401, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). The "plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (citations omitted). "Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Id.* Therefore, when reviewing a Rule 403 determination, a reviewing court will reverse the trial court's ruling "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990)).

Although not an exhaustive list, courts generally balance the following factors when performing a Rule 403 analysis: "(1) how probative the evidence is; (2) the potential of the

evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see also Inthalangsy v. State*, 634 S.W.3d 749, 758 (Tex. Crim. App. 2021). In this context, "probative value" refers to how strongly evidence makes the existence of a "fact of consequence" "more or less probable" and to how much the proponent needs the evidence, and "unfair prejudice" refers to how likely the evidence will result in a decision made on an "improper basis," including "an emotional one." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)).

"The trial court is presumed to have conducted the proper balancing test if it overrules a [Rule] 403 objection, regardless of whether it conducted the test on the record." *Rodriguez v. State*, 546 S.W.3d 843, 864 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (quoting *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997)). The balancing of these factors "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025) (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

### 2. *Analysis*

To determine whether the trial court properly concluded that the probative value of the jail call evidence is substantially outweighed by its danger of unfair prejudice, we review the trial court's ruling considering the Rule 403 factors. *See Colone*, 573 S.W.3d at 266. The first factor requires us to determine the probative value of the evidence. The probative value of Nichol's absconding from authorities while engaging in various behaviors, in addition to Nichol's overall nonchalant reaction to Debbie's allegations tends to make it more probable than not that Debbie

accurately explained Nichol's exposing his penis to her and forcing her hand to touch his penis, as the evidence from the jail calls suggests Nichol avoids taking responsibility for his actions. *See id.* at 256. This factor weighs heavily in favor of admission. As to the second factor, the evidence might have had the potential to impress the jury by leading the jury to believe Nichol might behave irresponsibly, as demonstrated by his recreational drug use. However, regarding this factor, there is no reason to think it would irrationally and indelibly impress the jury regarding the offenses for which Nichol was on trial given the detailed evidence Debbie provided about what happened to her in the security patrol car. *See Inthalangsy*, 634 S.W.3d at 758–59.

As to the third factor—the State's need to develop the evidence—the State did not spend a great deal of time on the evidence. Considering a one-day misdemeanor trial lasting all day until 9:00 p.m., the total time of the calls was approximately twenty-five minutes. *See id.* at 759. Other than the State laying the predicate for the admission of the calls, no witness testified about them. In closing, the State reminded the jury about the calls and Nichol's crass reference to the case as "sh--" from two years ago that should have been taken care of, as well as Nichol claiming the case will be dismissed. The State also informed the jury that it can consider Nichol's absconding for two years as evidence of guilt. This factor weighs in favor of admission. *See id*.

Regarding the fourth factor in a Rule 403 balancing test, the State's need for the evidence was moderate. On one hand, the State had evidence from Debbie about Nichol exposing his penis to her and then grabbing her hand and forcing her to touch it twice. Nichol's defense, on the other hand, focused on the occurrence of the assault and exposure despite Debbie being a highly trained licensed security officer, and the lack of any recorded evidence despite the security patrol car and the patrol officers being equipped with recording devices. The trial court could have concluded the State needed the evidence because its case would be strengthened by Nichol's crass and nonchalant

attitude towards Debbie's allegations, his absconding from authorities while being wanted for arrest, and the evidence of his self-centered concern for bonding out of jail instead of contemplating the seriousness of the allegations. *See id.* This factor weighs in favor of admission.

Finally, there is little risk of jury confusion as to whether Nichol was on trial for indecent assault and indecent exposure, as opposed to any other potential offense.

Applying the balancing factors to the facts of this case, we cannot conclude the trial court erred by finding the probative value of the evidence contained within the recorded jail calls was substantially outweighed by the risk of unfair prejudice. *See Colone*, 573 S.W.3d at 266.

Because the trial court's determination that the evidence here was relevant is within the zone of reasonable disagreement and because we cannot conclude the trial court erred by finding the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice, we conclude the trial court did not abuse its discretion by admitting the four recorded jail calls into evidence.

Accordingly, we overrule Nichol's first issue.

## STATE'S CLOSING ARGUMENT

In his second issue, Nichol argues the State presented improper closing argument during the punishment phase of trial by making a plea for community expectations when arguing, "So I would suggest that you focus more on the time than the money because that's what's going to tell the complainant that you guys are willing to stand up for her. And I hope that you do give him one year and six months, respectively."

"The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Milton v. State*, 572 S.W.3d 234, 239 (Tex.

Crim. App. 2019) (internal quotation marks omitted). "[P]roper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement." *Id*. "Generally, the bounds of proper closing argument are left to the sound discretion of the trial court." *Id*. at 240.

Nichol did not object to any portion of the State's closing argument. The Texas Court of Criminal Appeals has explained that the "right to a trial untainted by improper jury argument is forfeitable" and that "[e]ven an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." *Hernandez v. State*, 538 S.W.3d 619, 622–23 (Tex. Crim. App. 2018). The court concluded, "[e]rroneous jury argument must be preserved by objection pursued to an adverse ruling; otherwise, any error from it is waived." *Id*. at 623. Nichol, therefore, waived his issue pertaining to the State's closing argument.

Accordingly, we overrule Nichol's second issue.

## CONCLUSION

Having overruled Nichol's appellate issues, we affirm the trial court's final judgment of convictions.

Irene Rios, Justice

DO NOT PUBLISH